**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

FRANK CLIFFORD PARRY, JR.,    )
    )
    Plaintiff,    )
    )
v.    )    No. 1:21-cv-00096-SNLJ
    )
TORRENCE ADKINS, et al.,    )
    )
    Defendants.    )

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of self-represented plaintiff Frank Clifford Parry, Jr., a pretrial detainee at the Pemiscot County Justice Center ("PCJC"), for leave to commence this action without prepayment of the required filing fee. Having reviewed plaintiff's financial information, the Court will assess an initial partial filing fee of $42.67. Furthermore, after reviewing the complaint, the Court will dismiss the complaint without prejudice under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has filed his prison "account add statement," which shows all deposits into his prison account for the six months preceding his lawsuit. His account add statement shows $1,280 of deposits into plaintiff's prison account from January 18, 2021 through July 9, 2021. Based on this financial information, the Court will assess an initial partial filing fee of $42.67, which is twenty percent of plaintiff's average monthly deposit.

**Standard of Review**

On initial review, the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do," nor will a complaint suffice if it tenders bare assertions devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When conducting initial review pursuant to § 1915(e)(2), the Court must accept as true the allegations in the complaint, and must give the complaint the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the tenet that a court must accept the allegations as true does not apply to legal conclusions, *Iqbal*, 556 U.S. at 678, and affording a *pro se* complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993). Even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts are

not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.").

## The Complaint

Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against the following defendants: Torrence Adkins (Jail Administrator, PCJC); Christian Tate (Nurse, PCJC); Keith Guyton (Jailer, PCJC); Landon Logan (Sergeant, PCJC); and the PCJC. Plaintiff's allegations arise out of an incident on August 4, 2020 at the Pemiscot County courthouse. He brings his claims against defendants in their official capacities.

Plaintiff states that on August 4, 2020 at approximately 10:30 a.m., he had a hearing at the Pemiscot County courthouse. At some point during this proceeding, plaintiff told his jailer that he was not feeling well and felt like he might pass out. When his name was called to appear before the judge, plaintiff states that his "whole right side gave out" and he fell to the ground, hit his head, and broke his ankle. When plaintiff regained consciousness, Nurse Christian Tate had been called to the courthouse. Nurse Tate took plaintiff's vitals and examined his ankle. After examining plaintiff's ankle, Nurse Tate said plaintiff's ankle was sprained. Plaintiff told Nurse Tate that he could not walk on his foot and that he believed the injury was more serious than a sprain.

At this point, Nurse Tate called the PCJC administrator, Torrence Adkins. Mr. Adkins came to the courthouse. According to plaintiff, Mr. Adkins did not call an emergency vehicle, but made plaintiff stand up and walk back to the jail. At the jail, plaintiff again requested that Nurse Tate have him taken to the hospital—he states that he wanted his blood work tested to determine why he passed out in the courtroom. PCJC took plaintiff by private vehicle to the hospital. Plaintiff states that he "was made to get in this van with handcuffs on with a broken ankle and was forced to continuously walk on it."

At around 1 p.m., plaintiff arrived at the hospital with defendant Guyton in Pemiscot County's transport van. Plaintiff was taken to the emergency room where x-rays were taken of his foot and ankle. After his x-rays, plaintiff states that medical personnel at the hospital said, "my little bone was broken." Medical personnel then cast plaintiff's foot and ankle and referred him to a bone specialist in Cape Girardeau.

On August 6, 2020, plaintiff was examined at a bone and joint specialist in Cape Girardeau. Another set of x-rays were ordered. Upon examination of these additional x-rays, the specialist told plaintiff that not only was his little bone broken, but his joints were also dislocated and that he needed surgery.

The next day, August 7, 2020, plaintiff had surgery at 11 a.m. at St. Francis Medical Center. After the surgery, the surgeon told plaintiff he had to place seven screws, a titanium plate, and fifteen staples in plaintiff's ankle. Plaintiff states that he has a nine-inch scar from his surgery and still has problems with his ankle. He states that he is "looking for a lawyer who will take this case pro bono for a percentage of the winnings."

For relief, plaintiff seeks $1 million for pain and suffering, cruel and unusual punishment, and lack of medical attention.

## Discussion

As an initial matter, plaintiff has sued defendants in their official capacities only. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"). To prevail on this type of claim, plaintiff must

- 4 -

establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Plaintiff has not established any governmental entity's liability for any of the alleged conduct. As a result, the complaint fails to state a claim upon which relief can be granted against defendants Torrence Adkins, Christian Tate, Keith Guyton, and Landon Logan in their official capacities, and these claims will be dismissed.

Similarly, plaintiff's claims against the Pemiscot County Justice Center must be dismissed. The Pemiscot County Justice Center is a county jail, and "county jails are not legal entities amenable to suit." *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *see also Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local government are not "juridical entities suable as such"); *De La Garza v. Kandiyohi Cty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities).

Even if the Court were to assume plaintiff would amend his complaint to state his claims against defendants in their individual capacities, the complaint would be subject to dismissal on initial review. At all relevant times, plaintiff was a pretrial detainee, so his constitutional claims fall within the ambit of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). However, the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (stating that a pretrial detainee has the same rights to medical care under the due process clause as an inmate has under the Eighth Amendment).

To survive initial review, plaintiff must plead facts sufficient to state a plausible claim for deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976);

*Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of, but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011).

Here, plaintiff has not alleged facts establishing defendants were deliberately indifferent to plaintiff's medical needs. First, as to defendant Nurse Christian Tate, plaintiff alleges Nurse Tate was called to the courthouse after plaintiff fell to take his vital signs and examine his ankle. Tate examined plaintiff's ankle, and in her professional judgment stated that plaintiff had sprained his ankle. Plaintiff told her that he could not walk on his foot and that something was "bad wrong." While Nurse Tate was ultimately incorrect in her diagnosis of a sprained ankle, a missed diagnosis does not amount to a deliberate indifference of serious medical needs. *See McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) ("Negligent misdiagnosis does not create a cognizable claim under § 1983.").

To show deliberate indifference in a misdiagnosis, plaintiff must show defendants were more than grossly negligent. "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Id.* (citing *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (internal quotations omitted)). "The objective component requires a plaintiff to demonstrate an objectively serious medical need. The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such

need." *Thompson v. King*, 730 F.3d 742, 746 (8th Cir. 2013). Plaintiff has not met this burden. *See Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (finding no deliberate indifference where plaintiff diagnosed with severe constipation when later he was found to have a bowel obstruction). Plaintiff has not alleged that Nurse Tate actually knew he had broken his ankle and deliberately disregarded it. Nurse Tate's examination of plaintiff's ankle and diagnosis of a sprained ankle does not rise to the level of criminal recklessness. *Id.* Viewing all facts in the light most favorable to plaintiff, the Court cannot find that Nurse Tate was deliberately indifferent when, at worst, she negligently misdiagnosed plaintiff's ankle injury as a sprain.

After examining plaintiff, Nurse Tate called defendant Torrence Adkins, the Jail Administrator, to come to the courthouse. Mr. Adkins came to the courthouse, relied upon Nurse Tate's medical judgment that plaintiff had a sprained ankle, and asked plaintiff to walk back to the jail. "A prison official may rely on a medical professional's opinion if such reliance is reasonable." *McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009). Here, plaintiff makes no suggestion that Adkins was unreasonable to rely upon Nurse Tate's medical opinion. At this point, plaintiff's serious medical need was medically diagnosed as a sprained ankle and the Court cannot find anything about Adkins conduct that show his reliance on this diagnosis was not reasonable. Additionally, plaintiff alleges that when he returned to the jail, his primary concern was not his ankle but diagnosing why he had fainted. Plaintiff was then transported to the hospital in a Pemiscot County van.

Plaintiff states that at approximately 1 p.m. he arrived at the hospital escorted by defendant Officer Keith Guyton in a Pemiscot County van. At the emergency room, plaintiff was uncuffed and taken to the x-ray room. His x-rays revealed that his "little bone was broken." Medical staff at the hospital cast plaintiff's foot and referred him to a bone specialist, who plaintiff saw the next day. Plaintiff makes no allegations that defendant Keith Guyton was deliberately indifferent to his

medical needs. The only factual information related to Guyton was that he transported plaintiff to the hospital. To the extent plaintiff alleges Guyton made him walk to the transport van, there is no evidence to suggest Guyton knew of and deliberately disregarded plaintiff's broken ankle. Plaintiff's ankle had been examined and determined to be sprained. It was not unreasonable for Guyton to rely on Nurse Tate's professional judgment.

Finally, plaintiff does not allege any constitutional violations against defendant Landon Logan. Logan is identified only in the caption of the case as a "Sgt. over jailers." Plaintiff's statement of his claim does not allege any personal involvement of Logan in any of the events that form the basis of plaintiff's suit. Government officials may not be held liable for unconstitutional conduct under a theory of respondeat superior. *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018).

Finally, to the extent plaintiff brings this case because he is "looking for a lawyer who will take this case pro bono for a percentage of the winnings," this is not the purpose of a § 1983 lawsuit alleging constitutional violations. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). On initial review under 28 U.S.C. § 1915(e)(2)(B), the Court cannot find that plaintiff has alleged any constitutional deprivations against the officials of Pemiscot County Justice Center arising out of their care and treatment of his ankle from August 4 to August 7, 2020.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis is **GRANTED**.  [ECF No. 2]

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $42.67 within thirty of the date of this Order.  Plaintiff is instructed to make his remittance payable to

"Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants Torrence Adkins, Christian Tate, Keith Guyton, Landon Logan, and Pemiscot County Justice Center are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel is **DENIED as moot**. [ECF No. 3]

An Order of Dismissal will accompany this Memorandum and Order.

Dated this _____10th_____ day of February, 2022.


STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE